Good morning, Your Honors. May it please the Court. My name is Andrew Sagian on behalf of Plaintiff Appellate Michael Evans. I, along with my colleagues Melissa Velez and Kelsey Wong are certified law students with Loyola Law School's Ninth Circuit Clinic. I will start by discussing the due process claim. Then, Ms. Velez will address Mr. Evans' Eighth Amendment failure to protect and First Amendment retaliation claim. Finally, Ms. Wong will conclude with a discussion of the District Court's failure to maintain an adequate record for sufficient appellate review and his leave to amend claim. Since three of us will be arguing today, we'd like to reserve any remaining time for rebuttal. The only due process issue for this Court to decide is whether defendants are entitled to qualified immunity, since they've already conceded that Mr. Evans' liberty interest was implicated when they transferred him to the Administrative Segregation Unit. Defendants, however, are not entitled to qualified immunity because it was clearly established long ago that any transfer, or an initial transfer, to restrictive housing requires at least some level of due process. In Tusain v. McCarthy, a decision from 1986, this Court outlined the basic procedures that a prison must follow after determining an inmate will be involuntarily segregated. There needs to be an informal, non-adversary hearing within a reasonable time and notice of the charges against him or their reasons for considering segregation. None of that occurred here. It is undisputed that defendants did not provide Mr. Evans with notice or a basic opportunity to be heard. Defendants simply transferred Mr. Evans to the ASU for an indeterminate amount of time without providing any due process. Well, before the transfer, he was already in an Administrative Housing Unit, wasn't he? He was, Your Honor, and So on one level, it looks like he's being moved from Administrative at, which was first, Snake River was first or second? Anyway, Administrative at one to Administrative at another. Now, you argue with some facts that, in this case, a rose is not a rose, that they were different. But in fact, if you look at it from the record, how is it supposed to be so clear that this housing condition has changed so substantially? The main difference, Your Honor, is that he was in the Administrative Housing Unit voluntarily. However, when he was transferred to Snake River's Administrative Segregation Unit, it was an involuntary transfer. And for defendants to argue that it wasn't clearly established prior to Brown that prison officials could not engage in this sort of conduct, i.e. lock somebody away in segregated housing involuntarily for 148 days strains all credulity. Can you point to any case that makes the distinction that you've made here? That is, that at the first place, he was there voluntarily, and at the second place, he wasn't, and that's enough to trigger it? Not specifically, but to say that there's just this basic outline of any sort of transfer that's involuntary. And that's the basic idea. That's not the case. I mean, transfer is involuntary all the time, getting sent from one prison to another. So it can't be just the fact he's being moved not at his request. That doesn't trigger due process rights. Well, I mean, since they've conceded that a liberty of interest was implicated because of the significant and atypical hardships experienced in the Administrative Segregation Unit, that's what triggered the due process rights, Your Honor. And then also, moreover, Brown decided an entirely different issue, which is the case that they're heavily relying on for qualified immunity. It addressed post-placement periodic review. In Brown, that inmate claimed due process violations of prison officials did not provide periodic meaningful review, not the denial of notice and opportunity to be heard in the first instance. The conditions there were so severe that the court, the circuit, thought that there needed to be an additional level of due process, not only that basic level of an opportunity to be heard and noticed. There needed to be something along the lines of periodic review. If there are no further questions regarding due process, we ask that this court reverse the district court's grant of qualified immunity and allow Mr. Evans an opportunity to proceed to trial. Thank you, Your Honors. Good morning. I am Melissa Velez, also a certified law student, and I will briefly address the Eighth Amendment failure to protect claim and the First Amendment retaliation claim. The crux of the Eighth Amendment failure to protect claim is that the district court erred when it misapplied the motion for summary judgment standard to the defendant's motion to dismiss, essentially converting that motion to dismiss into a motion for summary judgment and holding Mr. Evans responsible for that higher standard, although he had been denied the opportunity to take discovery and also leave to amend. Defendants don't dispute this point. However, they now argue that Mr. Evans, regardless, would not have survived the motion to dismiss had it actually been resolved as a motion to dismiss. It is our position that he would have survived the motion to dismiss because he alleged sufficient ultimate facts and the basis for these facts. As to the First Amendment retaliation claim, the district court erred when it dismissed the retaliation claim at summary judgment on the issue. Defendants don't dispute that they have a penological interest in restricting the language in an inmate's written grievance. Defendants agree that this is an error pursuant to this court's holding of Bradley, but they now introduce a new issue on appeal. They now argue that the ICF, the inmate communication form that Mr. Evans used, was not the proper form for an official grievance and, therefore, not protected by Bradley. We take issue with this position because Mr. Evans will now be severely prejudiced, being that he didn't have the opportunity to present And what is he looking for for that claim? I assume money damages, because he had some rights taken away from him that was improper by your view. He would be entitled to some sort of monetary compensation for that. Correct. That's my understanding, Your Honor. If there are no further questions on either of these issues, I will leave time for my colleague, Ms. Kelsey Wong. Very good. Thank you. Hi, and good morning, Your Honors. My name is Kelsey Wong, and I am also a certified law student. I realize we actually have more time than I thought, but I had prepped three key points regarding the leave to amend issue, as well as the adequacy of the record. First, with regards to leave to amend, if this court agrees with us on Evans' due process claim, then he is necessarily entitled to amend his complaint in order to add damages based upon his 2012 transfer into the ASU. Why? In fact, Your Honor. This has been on for a long time. What was that, Your Honor? The case has been around for a long time. If you allow people to keep adding claims because of subsequent events, you may never come to an end. So why isn't within the court's prerogative to say, this case is about what happened in 2010, I think. And if you want to do something about 2012, you're going to have to file another lawsuit. What's unreasonable about that? How is that an abuse of discretion? It's our position that this was the exact same. He was transferred to the ASU in the exact same manner, and this stay actually lasted 658 days. And so it's not substantial prejudice to the defendants because of the fact that they had a new set of factual episodes. You may have to take discovery of things you wouldn't have had to take discovery of before. I mean, it's not, it's alleged to be the same kind of wrong, but it's a different wrong. It's a different event. Well, this is not the first time Mr. Evans raised it in the proposed first amended supplemental complaint. He actually raised this in the supplemental briefing to the court, but he did not get a chance to amend his complaint to add this claim as well. I'm not sure that answers my concern, though. Why is it an abuse? First, what's the standard of review here? The standard of review is abuse of discretion. So how is it an abuse of discretion for the court to say, this lawsuit is about things that happened then. I don't want to get this lawsuit involved with things that happened later. How is that an abuse of discretion? Well, it's our position that it's an abuse of discretion because in its order, the district court simply had stated that it was futile because they had already determined that on the first instance when he was transferred to the Administrative Segregation Unit in 2010, that it was merely futile because they had already said that the defendants had qualified immunity. So the district court dismissed of his claim without even listening to it on the merits. Again, to reinforce, it was the second time he was transferred into the ASU without due process and without notice of a hearing. Second, with respect to the adequacy of the record issue, this court simply cannot affirm the First Amendment or the Eighth Amendment claims based on the record before it. Without the documents that were submitted to the court in camera on the record, there's simply an incomplete record and this court cannot affirm on that basis. Third and last. What did your client do to retrieve? I mean, it's not an unusual practice for records submitted to the court to be returned to the parties. Did your client do anything to retrieve the records subsequently? Well, it's our position that the district court did not preserve the record in any way, either putting it in the record under seal or just putting it to the public record. See, the court doesn't keep everything. It's a matter of routine. It's not at all unusual for a district court to return to counsel for the parties materials that have been submitted. If there's a subsequent appeal, there are procedures whereby those can be retrieved. Did your client do anything to trigger the retrieval process? Well, Mr. Evans was pro se throughout most of the course of the litigation, and he was appointed. The answer to my question, no. I'm not aware of anything Mr. Evans did in particular to obtain the documents, but the point is is that the record is not clear. The record does not have these documents that the district court may have relied on in its order. So what is it that makes it the court obligation rather than your client's obligation to retrieve the documents to trigger that process? Well, nowhere in Federal Rule 10E does it state that it is the appellant's obligation to ensure that the record is complete, and regardless, in violation of the Oregon local rules 3-8, the court should have done one of three things to preserve the record, and it was not done in this case. Lastly, we ask this court reverse and remand Evans's case to the district court so that he is able to add his claim for damages based upon the 2012 transfer, and then also so that the parties can supplement the record or file new motions for summary judgment on the First and the Eighth Amendment claims. Thank you, counsel. Thank you. We will give you one minute of rebuttal so the three of you can decide how you want to split that up, all right? All right. Good morning. May it please the court. Cecil Rennish-Smith on behalf of the state defendants. I apologize if I start coughing in the middle of my presentation. My dog gave me kennel cough, and I will never forgive it for that. I would like to start. I will take the court's direction on what issues they're most interested in given that there are so many presented, but I would like to start by clarifying the state's position on the due process claim related to Mr. Evans's transfer to the administrative segregation unit at Snake River Correctional Institution. The state does not concede that the transfer implicated or violated a liberty interest, due process interest on Mr. Evans's part. What the state is allowing for purposes of this appeal is assuming that the district court correctly determined that the conditions in the ASU constituted an atypical and significant hardship in relation to regular prison life. Assuming that is correct, the state defendants are nevertheless entitled to qualified immunity. If this case were to be remanded for trial, the state defendants would proceed to have an evidentiary challenge to the issue of whether we even got to whether a liberty interest was. The district court skipped to the qualified immunity issue, which we now have the option to do. Right. And you're trying to make the point that you didn't, by going along or arguing to the district court it could resolve the case on that ground, you weren't meaning to concede that, in fact, there was a due process violation to begin with. Yes and no. The district court actually did not skip to the qualified immunity. The district court did find as fact that the conditions in the Snake River Correctional Institution, ASU, were significantly different from Three Rivers Correctional Institute, AHU, as to constitute an atypical and significant hardship, thus implicating and creating a liberty interest. And the latter is where he was when he was transferred, right? He was at Two Rivers in AHU, the administrative housing, and he was transferred. But the judge used the baseline where he was at the time of transfer. Correct. Yes, correct. He used the administrative housing unit as the baseline and found that based on the difference in conditions between those as fact that it created an atypical and significant hardship. For purposes of this appeal, we are not arguing with that. We are simply arguing that even if that is the case, qualified immunity attaches to the state defendants because they could not have known at the time of the transfer that that transfer in and of itself would have created a protected, would have implicated a protected liberty interest. The opposing counsel says you had said that it would. There would be some due process required. That's incorrect. And there was none here. That is incorrect. The state defendants never took the position that there was some due process required. The state defendants have merely agreed that for purposes of this appeal, based on the district court's determination that the state defendants were entitled to qualified immunity, the state defendants will accept the factual findings of the atypical and significant hardship that created the liberty interest in the first place and nevertheless, the district court found that nevertheless, there was no clearly established law at the time that would have let the state defendants know that what they were doing implicated Mr. Evans' liberty interest and violated the due process clause. And the reason for that... What wasn't clearly established? It was not clearly established that transfer into the ASU for 148 days implicated a liberty interest, was an atypical and significant hardship in relation to the conditions of ordinary prison life. Did that have to do with duration or the nature of the administrative unit at Snake River? Well, that's the point that the state defendants are hoping to make is that until this court's decision in Brown, the clearly established law to the extent there was any was the Supreme Court's decision in Wilkinson. And in Wilkinson, that court looked at three factors. The first were the conditions in the unit. The second was the duration of the confinement. And the third was the effect on the total duration of the prisoner's sentence. And Wilkinson involved the state of Ohio's Supermax prison. This was the maximum security, I believe California's version is Pelican Bay, where essentially all contact with the human world is cut off for these prisoners. And in Wilkinson, the court found that to be extremely harsh, but it also was because these prisoners were sent there with an indeterminate time. There was no knowing how long they would be there. And third, while they were there, they did not have the ability to seek or be granted parole, which would have given them a shorter sentence. And in Wilkinson, the court said any one of these factors alone may not be enough to establish a protected liberty interest, but the three taken together do. And Wilkinson also said that there may be more factors, but at least those three must be considered. So after Wilkinson, to the extent there was clearly established law as to what constituted an atypical and significant hardship, it was that there were three factors, that if they were met, they implicated a liberty interest. And this court has applied those regularly in Chappelle, in Ramirez, and has looked at the nature of the conditions, the duration of the confinement, and the effect on the prisoner's total sentence. In Brown, in 2014, this court determined that only two of those conditions necessarily were satisfied, but that was enough to implicate the due process clause. And in Brown, that was, again, an Oregon case. It was a prisoner who had been assigned to the intensive management union at the Oregon State Penitentiary, which, to the extent Oregon has a supermax, that's probably as close as it gets. And in that case, Mr. Brown was there for an indefinite period of time. He could not get out until he had completed all his programming, but the way that they had designed the programming, he couldn't complete it. And the conditions there were sufficient to differentiate it from the rest of the Oregon prison conditions. So is it your position that before Brown, under Wilkinson, you had to have all three pieces before the due process requirement was triggered, the hearing requirement was triggered? Yes. And that one of the pieces was missing in this case? Yes. At least one. Yes, and it was also missing in Brown, and that was the effect of the... Well, Brown comes later, though. I mean, you're trying to distinguish Brown, but with the limited time I'm just trying to focus in. Your argument, as I understand it, is that Wilkinson says you need three. At most, only two boxes were checked here. For sure, the third box wasn't checked here. Correct. So qualified immunity should apply. Correct. And I understand that Plaintiff is placing a lot of reliance on Toussaint and Hewitt and many cases that predated the U.S. Supreme Court's case in Sandin, and that reliance is misplaced. This court has made clear, most recently in the Chappelle case, that Sandin implicitly overruled Hewitt and all those other cases to the extent that they found a liberty interest based on state regulations. And so to find a liberty interest, you first must find the atypical insignificant hardship. Wilkinson is the closest we've got to that for at the time of this, and at the time of this transfer, the three boxes from Wilkinson, only two were ticked. In the brief time that I have left, I just want to note that for the Eighth Amendment claim, the court was dealing with two motions. They were dealing with Mr. Evans' motion for summary judgment on liability for that claim and with the State Defendant's motion to dismiss based on the pleadings. The court clearly ruled on both. It denied Mr. Evans' motion for summary judgment, saying that the evidence that he had presented in support of it was insufficient, and then granted the State, stating that the pleadings, as they were, were insufficient to the extent that Mr. Evans would have tried to present additional evidence to support those pleadings. It did find that that evidence was insufficient, but it wasn't by doing so converting it to a motion for summary judgment. I want to wrap up, Counsel. Yes. I will rely on the briefing for the rest of my argument. I believe that we did what we could, and we would ask this court to affirm the district court's ruling. Thank you very much, Counsel. All right, one minute. How are we doing this? One guy? All right, Lone Ranger, here we go. Good judgment, though. Good judgment. It's hard to divide a minute. Thank you for the additional time. We'd like to very briefly address three points. The first is the vast differences between the conditions in AHU and ASU. He was in virtually solitary confinement. Inmates remain alone in their cells for 23 to 24 hours per day. The only time an inmate can leave a cell is for visitation, exercise, showers, appearance, and hearings, and those, I guess, liberties can only be done with the one hour of time they have during the day. So these are Supermax-like conditions. Second, the qualified immunity argument that the defendants are trying to play up here is that there needs to be a specific finding for every time a qualified immunity analysis is going to occur. And that just means that the government officials can circumvent constitutional and administrative rules in every situation that slightly differs factually from the liberty interest the court has clearly established. Thank you, Your Honors. Right on time. Time flies when you're having fun, huh? I thank you, counsel, again for your fine argument. The matter is submitted.
judges: Clifton, Owens, Antoon